UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES CAMPBELL, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs*. | ) | 1:10-cv-01079-JMS-MJD |
| | ) | |
| THE CITY OF INDIANAPOLIS, IMPD OFFICER | ) | |
| JONATHAN HAYNES, in his individual | ) | |
| capacity, IMPD OFFICER MICHAEL PHILLIPS, | ) | |
| in his individual capacity | ) | |
|     *Defendants*. | ) | |

## ORDER

Presently before the Court is Defendants' Motion for Summary Judgment, [dkt. 66], which the Court **DENIES** for the reasons that follow.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible

evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330. A movant should not argue any fact to support its motion that is contested by admissible evidence.

## II.
### BACKGROUND

The facts viewed in the light most favorable to Plaintiff James Campbell, the non-moving party, are as follows. On the evening of July 14, 2009, Mr. Campbell and his neighbor left their

eastside Indianapolis neighborhood in Mr. Campbell's gold, 2001 Mercury Sable and headed to a nearby McDonald's restaurant. [Dkt. 71 at 2.] When Mr. Campbell drove into the McDonald's lot, he found that the drive-thru line was "pretty much wrapped around" the building, so he chose not to wait. [Dkt. 71 at 10.] Defendant Sgt. Jonathan Haynes of the Indianapolis Metropolitan Police Department ("IMPD") observed Mr. Campbell drive into the McDonald's parking lot and exit soon afterward. [*Id.*]

Sgt. Haynes had recently received information from local 911 dispatchers that several shots had been fired within the nearby area. [Dkt. 71 at 7.] One of the residents who called 911 reported seeing a "silver, newer vehicle leave the front of her residence" and a "dark truck heading toward her address." [Dkt. 71 at 7.] Deciding to stop Mr. Campbell's vehicle, but being unable to perform the stop in his unmarked IMPD vehicle, Sgt. Haynes dispatched for uniformed officers to assist him. [Dkt. 67 at 21.] Officer Michael Phillips was one of the officers dispatched. [*Id.*]

As Mr. Campbell re-entered his neighborhood, he noticed that he was being followed closely, but he did not know that the headlights behind him belonged to police vehicles. [Dkt. 71 at 12.] When Campbell parked in front of his own home, the police officers activated their lights and exited their police cars with guns drawn. [*Id.*] Officer Phillips shouted at Campbell and his passenger, "Don't move or you'll be shot and don't talk or you'll be shot." [*Id.*; 72-2 at 73.] Officer Phillips opened Campbell's door, removed him for his car, and placed him face down in the street. [Dkt. 72 at 12.] The officer then got on Mr. Campbell's back and handcuffed him. [*Id.*] Mr. Campbell was compliant throughout the encounter. [*Id.*] While lying face down in the street, Mr. Campbell consented to an automobile search, which produced no contraband. [*Id.* at 13.]

3

After reviewing Mr. Campbell's identification, the officers explained to Mr. Campbell the reason for the search and seizure. [*Id.*] During this explanation, the officers did not remove Mr. Campbell's handcuffs, despite his requests to be freed. [*Id.*]

## III.
### DISCUSSION

Mr. Campbell has brought claims against Sgt. Haynes and Officer Phillips in their individual capacities under 42 U.S.C. § 1983, alleging unlawful seizure and use of excessive force. He has also filed Indiana state law claims for battery and false arrest. The Court will examine each claim in turn.

### A. Mr. Campbell's § 1983 Claims

Title 42 U.S.C. § 1983 creates a cause of action against any individual who, while acting under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

#### 1. Unlawful Seizure

Mr. Campbell first alleges that the officers' actions constituted an unlawful seizure under the Fourth Amendment. The officers concede that Mr. Campbell was "seized," [dkt. 74 at 8], but they maintain that the seizure was a lawful investigatory stop, rather than a formal arrest. [*Id.* at 9.]

Under *Terry v. Ohio*, police officers may conduct a brief investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. 392 U.S. 1, 30 (1968); *United States v. Wimbush*, 337 F.3d 947, 949 (7th Cir. 2003). "Reasonable suspicion" must be based on some objective manifestation that the suspect is involved in criminal activity. *Wimbush*, 337 F.3d at 949. The likelihood of criminal activity

4

need not rise to probable cause. *Id*. at 949-50 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Courts examine the reasonableness of a stop based on the totality of the circumstances known to the officer at the time of the stop. *Id*. at 950; *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002). Under this standard, courts should consider (1) whether the Defendants' actions were "reasonably related in scope to the circumstances which justified the interference;" (2) whether the detention was temporary and lasted no longer than necessary to effectuate the purpose of the stop; and (3) whether the Defendants used the least intrusive methods that were reasonable available to them to dispel their suspicions. *Terry*, 392 U.S. at 19-20; *Florida v. Royer*, 460 U.S. 491, 500 (1983).

There is no bright line test to determine when a Terry stop evolves into a formal arrest; rather, the Court considers the totality of the circumstances of each case. *Smith v. Ball State Univ.*, 295 F.3d 763, 768 (7th Cir. 2002); *see also United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004) ("The fault line between an investigative detention and an arrest is flexible and highly fact-intensive"). The Seventh Circuit has explained that "the differences between a Terry stop and a formal arrest are subtle, but important in most cases," due to the differing standards used to determine their legitimacy. *Smith,* 295 F.3d at 768. Whereas the validity of a Terry stop depends on an officer's ability to provide articulable facts giving rise to a reasonable suspicion of criminal activity, a formal arrest must meet the higher standard of probable cause. *Id*. Probable cause to make an arrest exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man's belief that the suspect has committed or was committing an offense. *Id.* at 769.

Here, the parties dispute the events leading up to Mr. Campbell's seizure. According to Sgt. Haynes, he had reasonable suspicion that Mr. Campbell committed a traffic violation –

5

specifically that Mr. Campbell "slow-rolled" a stop sign at the intersection of 10th Street and Denny Street. [Dkt. 71-3 at 16.] However, Mr. Campbell maintains that he never passed through that intersection, but turned unto 10th Street from Euclid Avenue, where the intersection is controlled by a traffic light, not a stop sign. [Dkts. 71 at 5; 71-2 at 58-64.] While the IMPD officers attempt to call into question Mr. Campbell's memory at a deposition taken "twenty-three months after the fact," [dkt. 74 at 6], the credibility of evidence is an assessment reserved for the trier of fact. *Schacht* 175 F.3d at 504. The inquiry on summary judgment is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence. *Id.* Accordingly, the Court finds that genuine issues of triable fact exist concerning the legitimacy of the initial seizure, and Mr. Campbell's unlawful seizure claim therefore survives summary judgment. *Celotex*, 477 U.S. at 323.

The parties also dispute what occurred following Mr. Campbell's initial seizure. The IMPD officers contend that they performed an investigatory stop, during which Officer Phillips momentarily drew but "immediately re-holstered his firearm" before approaching Mr. Campbell's vehicle. [Dkt. 67 at 22-23.] They further maintain that they used "the least invasive methods that were reasonable available to them to dispel their suspicions." [Dkt. 74 at 14.] Mr. Campbell, however, characterizes the encounter as a formal arrest, during which he was "approached at gunpoint," [dkt. 72 at 18], "held at gunpoint," and handcuffed "despite his full compliance with police orders." [Dkt. 72 at 22.] He offers affidavits from three witnesses to support his version of the facts. [*Id.*; dkts. 71-5, 71-6, 71-7.]

The facts in dispute here bear directly on the type of seizure performed and the applicable standard determining that seizure's legitimacy. *See Williams v. State*, 630 N.E.2d 221, 224 (Ind. Ct. App. 1994) (holding that ordering a citizen to lie on the ground at gunpoint constituted a

formal arrest). Giving Mr. Campbell the benefit of all reasonable inferences from the evidence submitted, the Court will resolve "any doubt as to the existence of a genuine issue for trial . . . against the [Defendants]." *Celotex*, 477 U.S. at 330.

Drawing the distinction between a formal arrest and an investigatory stop is a "highly fact-intensive" inquiry, *Stewart*, 388 F.3d at 1084, and the Court finds that issues of triable fact exist concerning what actually occurred outside of Mr. Campbell's home. Furthermore, issues of triable fact exist regarding the existence of reasonable suspicion prior to the initial seizure and the legality of its performance. Accordingly, the Court **DENIES** the Defendants' summary judgment motion on the unlawful seizure claim.

### 2. Excessive Force

In his Amended Complaint, Mr. Campbell also alleges that the IMPD officers used excessive force in detaining him. On motion for summary judgment, the officers argue that the amount of force used was reasonable and necessary given the totality of the circumstances. [Dkt. 67 at 22-24.]

The Court analyzes excessive force claims under the Constitution's Fourth Amendment and its reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Under this standard, the relevant inquiry is "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them." *Id.* (internal quotations omitted). *See also United States v. Amaral-Estrada*, 509 F.3d 820, 827 (7th Cir. 2007) ("Courts examine the reasonableness of a stop based on the totality of the circumstances known to the officer at the time of the stop"). The inquiry is the same for all seizures, regardless of whether it was an investigatory stop or a formal arrest. *Smith*, 295 F.3d at 770, n.5 (citing *Graham*, 490 U.S. at 388).

Again, the parties here offer two very different characterizations of what unfolded in front of Mr. Campbell's home. The IMPD officers maintain that "a firearm was pointed at [Mr. Campbell's] vehicle for mere seconds," [dkt. 74 at 15], by Officer Phillips and that he "immediately re-holstered his firearm" before approaching Mr. Campbell's vehicle. [Dkt. 67 at 22-23.] In contrast, Mr. Campbell describes being "held at gunpoint," [dkt. 71 at 22], by more than one gun-wielding officer [dkt. 71 at 6]. He specifically claims that Sgt. Haynes pointed a gun at him. [Dkt. 71 at 25.] To support his version of the events, he submitted the affidavits of three witnesses. [*Id*, dkts. 71-5, 71-6, 71-7.]

Because the relevant inquiry here is the existence of admissible evidence to support Mr. Campbell's version of events, and because Mr. Campbell is entitled to the benefit of reasonable inferences from the evidence, the Court finds that Mr. Campbell has presented sufficient admissible evidence to raise a question about the reasonableness of the force. At the very least, genuine issues of material fact exist regarding the length, degree and nature of the force used. Therefore, the Court **DENIES** the Defendants' motion for summary judgment on the excessive force claim.

### 3. Qualified Immunity

In their brief, the IMPD officers raise the affirmative defense of qualified immunity. [Dkt. 67 at 24.] The doctrine of qualified immunity protects a law enforcement officer from civil liability when that officer is performing a discretionary function and a reasonable officer would have believed that his actions were within the bounds of the law at the time he acted. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007).

Disputes of material fact exist that preclude summary judgment on the grounds of qualified immunity. Specifically, the legality of Mr. Campbell's seizure is in question, and the

factual disputes surrounding that underlying issue bear directly on whether a reasonable officer would have believed the actions taken here by the IMPD officers were within the bounds of the law. *See Mahoney v. Kersey*, 976 F.2d 1054, 1058 (7th Cir. 1992) ("[I]f a reasonable officer would not have believed the person had committed a crime, then the officer, whatever he did or did not believe, is acting contrary to clearly established law and therefore has no immunity"). The Court finds that genuine issues of fact exist with respect to qualified immunity; accordingly, the officers are not entitled to summary judgment on those grounds.

### B. Mr. Campbell's State Law Claims

In addition to his § 1983 claims, Mr. Campbell also brings state law claims of battery and false arrest, naming the City of Indianapolis as an additional Defendant under the doctrine of *respondeat superior*. *See Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) ("Vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting 'within the scope of employment'").

#### 1. Battery

Mr. Campbell alleges that the IMPD officers battered him by over-tightening his handcuffs and prolonging their use after it was clear he had not engaged in any criminal activity. [Dkt. 71 at 26.] In their brief, the IMPD officers argue that Mr. Campbell was "only briefly detained" [dkt. 67 at 29], and that as law enforcement officers, they had legal authority to engage what would otherwise constitute battery. [Dkt. 67 at 31.]

Under Indiana law, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *See Mullins v Parkview Hosp., Inc.,* 865 N.E.2d 608, 610

(Ind. 2007) (internal citations omitted). Indiana law also provides that an individual is justified in engaging in conduct otherwise prohibited if he has legal authority to do so. Ind. Code § 35-41-3-1. Therefore, to establish a battery claim against a police officer effectuating an investigatory stop or arrest, a plaintiff must show that the officer used "unnecessary or excessive force." *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010).

As discussed earlier, the parties here dispute what happened outside of Mr. Campbell's home, and the lawfulness of the seizure is at issue. Therefore, just as summary judgment on the § 1983 excessive force claim is precluded by the parties' factual dispute about the amount of force the IMPD officers used, so too is it precluded with regard to the battery claim. Accordingly, the Court **DENIES** the Defendants' summary judgment motion regarding the battery claim.

### 2. False arrest

Mr. Campbell also alleges that the IMPD officers are liable for false arrest under Indiana law. [Dkt. 71 at 22-23.] The IMPD officers contend that they are entitled to summary judgment on the false arrest claim, arguing that "not every individual who is placed in handcuffs is also arrested." Their contention misapprehends the elements of false arrest.

Under Indiana law, false arrest is the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent. *Miller v. Anderson*, 777 N.E.2d 1100 (Ind. Ct. App. 2002). To succeed on a claim of false arrest against a law enforcement officer, a plaintiff must establish the absence of probable cause for the arrest. *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007) (internal citations omitted). "The probable cause determination turns on 'whether a reasonable person, under the facts and circumstances encountered by the arresting

officer, would believe that the suspect had committed or was committing a criminal offense." *Id*. at 1017 (internal citations omitted).

The same issues of triable fact that exist regarding the unlawful seizure are material to the state law false arrest claim.  Because material facts concerning lawfulness of the seizure are in dispute,  the claim for false arrest similarly cannot be resolved on summary judgment.  Therefore, the Court **DENIES** the Defendants' motion for summary judgment on the false arrest claim.

### IV.
### CONCLUSION

Genuine disputes of material fact exist concerning the nature and legality of Mr. Campbell's seizure and the reasonableness the force used by the IMPD officers.  Those disputes also preclude both a grant of summary judgment and a finding of qualified immunity.  Therefore, the Court **DENIES** Defendants' Summary Judgment Motion.  [Dkt. 66.]

10/25/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution by ECF only**:

Robb Alan Minich
MINICH LAW FIRM, P.C.
P.O. Box 441630
Indianapolis, IN 46244-5909
MinichLawFirm@gmail.com

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
200 E. Washington Street
1601 City-County Building
Indianapolis, IN 46204
bdale@indygov.org

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
200 E. Washington Street
1601 City-County Building
Indianapolis, IN 46204
jhaley@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
107 N. Pennsylvania Street
Suite 900
Indianapolis, IN 46204
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
107 N. Pennsylvania Street
Suite 900
Indianapolis, IN 46204
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
107 N. Pennsylvania Street
Suite 900
Indianapolis, IN 46204
jfk@rucklaw.com

John C. Ruckelshaus
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
107 N. Pennsylvania Street
Suite 900
Indianapolis, IN 46204
jcr@rucklaw.com